**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | |
|---|---|
| **UNIVERSITY OF NORTH CAROLINA HEALTH CARE SYSTEM; JOHNSTON HEALTH SERVICES CORPORATION, A/K/A JOHNSTON MEMORIAL HOSPITAL AUTHORITY; and NASH HOSPITALS, INC.,** | |
| *Plaintiffs,* | **Civil Action No: 1:25-cv-461** |
| **v.** | |
| **AETNA HEALTH, INC.; AETNA LIFE INSURANCE COMPANY; and AETNA HEALTH MANAGEMENT LLC,** | |
| *Defendants.* | |

---

## DEFENDANTS' ANSWER AND COUNTERCLAIMS

---

Defendants Aetna Health Inc., Aetna Life Insurance Company, and Aetna Health Management LLC (collectively, "Aetna" or "Defendants") file this Answer to Plaintiffs University of North Carolina Health Care System, Johnston Health Services Corporation, a/k/a Johnston Memorial Hospital Authority, and Nash Hospitals, Inc.'s ("Plaintiffs" or "UNC") Complaint (the "Complaint"), and states as follows:

### INTRODUCTORY STATEMENT

Plaintiffs allege that Aetna failed to correctly reimburse them for outpatient prescription drugs provided under the federal 340B program. In simplest terms, this is a theory without factual or legal support. Aetna applied the parties' agreed-upon rates—

1

which are set by the Center for Medicare and Medicaid Services ("**CMS**"), not Aetna—in

effect at the time the services at issue were provided. Plaintiffs' reasoning is fundamentally

flawed on multiple levels and ignores the express terms of the parties' Agreements[1], which

prohibit the very relief they now seek. But from a big-picture perspective, Plaintiffs'

dubious narrative disregards the following:

(1)　for rural and low-income patients, the 340B program is fraught with abuse and has become a lucrative profit center for participating hospitals;

(2)　Due to Medicare's budget-neutrality requirement, CMS's reductions in payments for 340B drugs resulted in ***higher*** payments for non-drug items and services, which largely offset any decrease in reimbursements for 340B drugs and, in many cases, resulted in 340B participating hospitals receiving more money than they would have had the rate reduction not taken place;

(3)　Courts—including the United States Supreme Court in *American Hospital Association v. Becerra*—have repeatedly declined to vacate the 340B reimbursement rates that were in effect for the claims at issue;

(4)　CMS's post-*Becerra* remedy expressly excludes Medicare Advantage Organizations, such as Aetna; and

(5)　Most importantly, the terms of the Agreements between the parties prohibit the retroactive rate adjustments that Plaintiffs seek.

Under the parties' Agreements—and equitable principles—Plaintiffs are entitled to

nothing more. Specifically, Aetna contracted with Plaintiffs, and, as it relates to this case,

the parties' Agreements incorporate reimbursement rates set by CMS, which includes 340B

---

[1]　"**Agreements**" refer to the 2012 Hospital Services Agreement between Aetna Health Inc., Aetna Life Insurance Co., and Aetna Health Management, LLC and UNC Health Care System (eff. Nov. 1, 2012), as amended, the 2021 Physician Hospital Organization Agreement between Aetna Network Services LLC and UNC Health Care System (eff. Dec. 1, 2021), as amended, and the 1995 Facility Participation Agreement between Nash General Hospital and Aetna Health Management, Inc. (eff. July 1, 1995), as amended.

drugs. The Agreements further provide that 340B-acquired drugs would be reimbursed at the CMS rates in effect when services were provided and include multiple provisions that expressly prohibit the very retroactive rate adjustment that Plaintiffs seek under their various legal theories.

PARTIES

1.      Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 1 of the Complaint, and, therefore, denies same.

2.      Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 2 of the Complaint, and, therefore, denies same

3.      In response to Paragraph 3 of the Complaint, Aetna admits that Aetna Health, Inc. is a Pennsylvania corporation that it is in the business of health care insurance, administering health care benefits to member of health benefit plans, including Medicare Advantage ("MA") plans. Specifically, as it relates to the alleged claims at issue here, Aetna is a Medicare Advantage Organization ("MAO") that contracts with CMS to administer Medicare benefits through various MA plans for eligible Medicare enrollees. To provide these benefits, Aetna contracts with Medicare providers to provide services, supplies, and drugs to the enrolled Medicare members.[2] CMS, in turn, reimburses MAOs through a combination of fixed and risk-adjusted payments.

---

[2]   *See* 42 U.S.C. § 1395w-24(a)(6)(B)(ii).

4.     In response to Paragraph 4 of the Complaint, Aetna admits that Aetna Life Insurance Co. is a Connecticut corporation and is in the business of health care insurance, as described above in Paragraph 3 of Aetna's Answer.

5.     In response to Paragraph 5 of the Complaint, Aetna admits that Aetna Health Management LLC is a Delaware corporation and is in the business of health care insurance, as described above in Paragraph 3 of Aetna's Answer.

### THE PARTIES' AGREEMENTS

6.     In response to Paragraph 6 of the Complaint, Aetna admits that it entered into a 2012 Hospital Services Agreement with Plaintiff UNC Health, as amended, refers to that contract for its terms, and denies all allegations inconsistent with the terms of the parties' contract. Further answering, Aetna admits that it entered into a 2021 Physician Hospital Organization Agreement with Plaintiff UNC Health (eff. Dec. 1, 2021), as amended, refers to that contract for its terms, and denies all allegations inconsistent with the terms of the parties' contract.

7.     In response to Paragraph 7 of the Complaint, as set forth above in Paragraph 6 of Aetna's Answer, Aetna admits that it entered into a 2021 Physician Hospital Organization Agreement with Plaintiff UNC Health (eff. Dec. 1, 2021), as amended, refers to that contract for its terms, and denies all allegations inconsistent with the terms of the parties' contract.

8.     In response to Paragraph 8 of the Complaint, Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations that the

4

parties entered into a Hospital Services Agreement in effect prior to December 1, 2018 and, therefore, denies same. Further answering, Aetna entered into a 1995 Facility Participation Agreement with Nash General Hospital (eff. July 1, 1995), as amended, refers to that contract for its terms, and denies all allegations inconsistent with the terms of the parties' contract.

9.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 9 of the Complaint and, therefore, denies same.

## JURISDICTION AND VENUE

10.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 10 of the Complaint and, therefore, denies same.

11.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 11 of the Complaint and, therefore, denies same.

12.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph12 of the Complaint and, therefore, denies same.

13.    Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 13 of the Complaint and, therefore, denies same.

14.     Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 14 of the Complaint and, therefore, denies same.

## FACTUAL BACKGROUND

15.     Paragraph 15 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 15 of the Complaint.

16.     In response to Paragraph 16 of the Complaint, Aetna admits that it is an MAO that is contracted with CMS to administer MA plans for Medicare eligible enrollees.

17.     In response to Paragraph 17 of the Complaint, Aetna admits that it is an MAO that is contracted with CMS to administer MA plans for Medicare eligible enrollees. Further answering, Aetna denies the remaining allegations contained in Paragraph 17 of the Complaint.

18.     Aetna admits that it entered into the Agreements with Plaintiffs, as amended, refers to those contracts for their terms, and denies all allegations inconsistent with the terms of the parties' contracts. Further answering, Aetna is without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 18 of the Complaint and therefore denies same.

19.     Aetna admits that it has entered into the Agreements with Plaintiffs, as amended, refers to those contracts for their terms, and denies all allegations inconsistent with the terms of the parties' contracts. Further answering, Aetna is without knowledge or

6

information sufficient to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 19 of the Complaint and therefore denies same.

20. In response to Paragraph 20 of the Complaint, Aetna expressly denies that any payments rendered by Aetna to Plaintiffs for 340B drugs from January 1, 2018, to September 28, 2022 (the "**Disputed Period**") were improperly and unilaterally discounted.

21. Aetna denies the allegations in Paragraph 21 of the Complaint.

22. Paragraph 22 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 22 of the Complaint.

23. Aetna lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 23 of the Complaint and, therefore, denies same.

24. In response to Paragraph 24 of the Complaint, Aetna admits that it entered into the Agreements with Plaintiffs, as amended, refers to those contracts for their terms, and denies all allegations inconsistent with the terms of the parties' contracts. Aetna otherwise denies the remaining allegations in Paragraph 24 of the Complaint as inconsistent with the terms of the parties' contract.

25. In response to Paragraph 25 of the Complaint, Aetna admits that during the Disputed Period, Aetna reimbursed Plaintiffs for 340B drug claims at ASP -22.5%, instead of ASP +6%, but denies it was improper to do so.

26. Aetna denies the allegations in Paragraph 26 of the Complaint.

27. In response to Paragraph 27 of the Complaint, Aetna admits that at the time it reimbursed Plaintiffs for 340B drug claims it assumed that CMS properly applied the rate reduction to ASP -22.5% and reimbursed Plaintiffs according to the terms of the parties' Agreements, as amended. Aetna denies the remaining allegations in Paragraph 27 of the Complaint.

28. Paragraph 28 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 28 contrary to the Supreme Court's decision in *Am. Hosp. Ass'n v. Becerra,* 596 U.S. 724 (2022) and refers to the court's decision for its terms. Further answering, Aetna states that in June 2022, the United States Supreme Court ruled that the Department of Health and Human Services' ("**HHS**")[3] decision to reduce the reimbursement rates for 340B-acquired drugs exceeded its rulemaking authority and was, therefore, unlawful.[4] The court did not, however, vacate the 2018 rate reduction in effect during the Disputed Period and, in fact, refused to opine on the appropriate remedy.[5] On remand, the district court

---

[3] HHS and CMS (collectively, the "**Departments**") work in conjunction to set the payment rate. The Supreme Court's decision refers only to HHS because, by statute, the Secretary of HHS is responsible for calculating or adjusting the average drug price. *See* 42 U.S.C. § 1395w-3a. However, some authorities refer to CMS, while others refer to CMS and HHS collectively. Any discrepancies regarding the entity that can or did adjust the 340B drug reimbursement rate are immaterial.

[4] *See AHA v. Becerra,* 596 U.S. 724, 735-36 (2022).

[5] *See id.* at 738-39 ("At this stage, we need not address potential remedies.").

8

likewise declined to vacate the 340B reimbursement rates for the Disputed Period.[6] Instead, the court remanded the issue to HHS, allowing the agency an opportunity to remediate.[7]

29. Paragraph 29 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Aetna admits that on November 2, 2023, the Departments—after extensive rulemaking and comment periods—issued and released the OPPS Remedy for the 340B-Acquired Drug Payment Policy (the "**<u>Final Rule</u>**"). Aetna denies all allegations in Paragraph 29 that are inconsistent with the Final Rule and refers to the Final Rule for its terms. Further answering, Aetna states that the Departments did not vacate the 2018 rate reduction.

30. Paragraph 30 of the Complaint contains conclusions of law to which no response is required. To the extent a response is required, Aetna admits that the Final Rule implements one-time lump-sum payments to eligible hospitals to cover the difference between the amount previously paid by *traditional Medicare* for 340B drugs at the ASP - 22.5% rate and the approximate amount that would have been paid at the ASP +6% rate "if

---

[6] *Am. Hosp. Ass'n v. Becerra,* 2023 WL 143337, at *4-5 (D.D.C. Jan. 10, 2023). The district court did vacate the *prospective* application of the 2022 OPPS Rule's reimbursement rate for 340B hospitals, which applied to payments beginning September 28, 2022. *See Am. Hosp. Ass'n v. Becerra,* 2022 WL 4534617, at *5 (D.D.C. Sept. 28, 2022).

[7] *See Becerra,* 2023 WL 143337, at *1 ("But rather than vacate those rules, [the court] will remand without vacatur to give the agency the opportunity to remediate its underpayments.").

the adjustment had not been in place."[8] Aetna denies all allegations in Paragraph 30 that are inconsistent with the Final Rule and refers to the Final Rule for its terms. Further answering, Aetna states that the Departments did not vacate the 2018 rate reduction. Critically, the Departments expressly found that they lacked the authority to regulate—and, in fact, are statutorily prohibited from interfering with—MAOs' contracts with providers:

> CMS may not require MAOs to contract with a particular healthcare provider or use particular pricing structures with their contracted providers. **Therefore, MAOs that contract with a provider or facility eligible for 340B drugs can negotiate the terms and conditions of payment directly with the provider or facility and CMS cannot interfere in the payment rates that MAOs set in contracts with providers and facilities.**[9]

As the above demonstrates, the Departments made clear that, as it relates to contracted providers—such as Plaintiffs—MAOs such as Aetna are ***not*** bound by the Final Rule. Contrary to Plaintiffs' assertion, in no way does the Final Rule so much as imply that Plaintiffs are entitled to payment from Aetna.

31. Aetna denies the allegations in Paragraph 31 of the Complaint.

32. Aetna denies the allegations in Paragraph 32 of the Complaint.

33. Aetna denies the allegations in Paragraph 33 of the Complaint.

34. In response to Paragraph 34 of the Complaint, Aetna denies Plaintiffs have been damaged because of Aetna's actions or that its actions were improper. Paragraph 34

---

[8] *See* OPPS REMEDY FOR THE 340B-ACQUIRED DRUG PAYMENT POLICY FOR CALENDAR YEARS 2018-2022, 88 Fed. Reg. 77150, 77185 (Nov. 8, 2023) (emphasis added) ("Final Rule").

[9] *See id.* at 77184 (emphasis added).

also contains conclusions of law to which no response is required. To the extent a response is required, Aetna denies the allegations in Paragraph 34 of the Complaint. Aetna also lacks knowledge or information sufficient to form a belief as to the truth or falsity of the amount of Plaintiffs' alleged arrearages in Paragraph 34 of the Complaint and, therefore, denies same.

## CAUSES OF ACTION

### COUNT #1
### BREACH OF CONTRACT

35.    Aetna repeats and realleges its answers and responses to Paragraphs 1-34 of the Complaint as though fully set forth herein.

36.    In response to Paragraph 36 of the Complaint, Aetna admits that it has entered into the Agreements, as amended, refers to those contracts for their terms, and denies all allegations inconsistent with the terms of those contracts.

37.    Aetna denies the allegations contained in Paragraph 37 of the Complaint.

38.    Aetna denies the allegations contained in Paragraph 38 of the Complaint.

39.    Aetna denies the allegations contained in Paragraph 39 of the Complaint.

### GENERAL DENIALS

1.    Aetna denies any and all of the Complaint's allegations that it did not specifically admit in this Answer.[10]

---

[10] The Complaint also contains causes of action for Specific Performance (Count 2) and Declaratory Judgment (Count 3), but those claims were dismissed in the Court's September 8, 2025 Order; therefore, Counts 2 and 3 are not specifically addressed herein.

11

2.      Aetna denies that Plaintiff is entitled to any relief sought in any "WHEREFORE" clauses of the Complaint.

3.      Aetna reserves the right to amend or supplement its response to the allegations above or any of the affirmative defenses below as appropriate.

AFFIRMATIVE AND OTHER DEFENSES

For its defenses to the Complaint, Aetna states the following. Where the substantive law so provides, Aetna does not assume the burden of proof on any of the following defenses.

1.      Plaintiffs fail to state a claim upon which relief can be granted. Aetna paid all claims in accordance with the terms of the parties' Agreements, as amended, including the rate schedules therein.

2.      Plaintiffs' claims are barred, in whole or in part, under the terms of the operative Agreements, which require Aetna to reimburse 340B-acquired drug claims at the agreed-upon Medicare rates set by CMS that were in effect on the date that covered services were provided. *See, e.g.,* 2021 Physician Hospital Organization Agreement Rate Schedule at pp. 158, 176, 188 ("The Medicare Allowable Payment is…final and will not be impacted by cost settlements, reconciliations, or any other retroactive adjustments performed by a Medicare Administrative Contractor (MAC) for both overpayments and underpayments"); *id.* at pp. 162, 180, 192 ("Payment will be based on the version of the software and the applicable Medicare rate file in use by Company on the date of service"); 2012 Medicare Amendment to Hospital Services Agreement Rate Schedule at p. 8 ("The Medicare

Allowable payment is…final and exclusive of cost settlements, reconciliations or any other retroactive adjustments as completed by a F1 for both overpayments and underpayments"); *id.* at p. 12 ("Payment will be based on the version of the software and the applicable Medicare rate file in use by Company on the date of service").

3.      Plaintiffs' claims are barred, in whole or in part, because the remedy sought (i.e., additional payments on claims for 340B-acquired drugs that were correctly processed and paid over a four-year period) would create an inequitable or unconscionable outcome.

4.      Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to timely challenge, dispute, or complain about any payments made by Aetna on any medical claim at issue in the Complaint. Accordingly, under the parties' Agreements, payment for claims is considered full and final. *See, e.g.,* 2012 Hospital Service Agreement, § 4.1.1; 2021 Physician Hospital Organization Agreement, § 1.4.

5.      Plaintiffs' claims are barred, in whole or in part, by the doctrines of waiver, estoppel, or ratification. Among other things, Plaintiffs negotiated amendments with full knowledge regarding the existing CMS rates for 340B-acquired drugs and how those rates were calculated, and Plaintiffs accepted those rates.

6.      Plaintiffs further accepted the benefits of all payments from Aetna under existing CMS rates, and Aetna relied upon Plaintiffs' conduct and the CMS rates in effect at the time services were provided in conducting its MA business. Aetna fulfilled its contractual obligations to Plaintiffs, and Plaintiffs are not entitled to any additional contractual payments. Moreover, in the interest of equity, Plaintiffs have been fully

compensated for their services, and additional payments from Aetna would result in a windfall to Plaintiffs and a detriment to Aetna based on circumstances beyond its control.

7.     Plaintiffs' claims are barred, in whole or in part, under the doctrines of payment and/or accord and satisfaction.

8.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs have failed to exhaust their administrative and/or contractual remedies, which are a prerequisite to bringing any claim for payment due under the Medicare Act.

9.     Plaintiffs' claims are barred, in whole or in part, because Plaintiffs failed to exhaust Aetna's internal grievance procedures, which is a pre-requisite to filing this Complaint under the Agreements. *See, e.g.,* 2012 Hospital Service Agreement, §§ 8.1, 8.2; 2021 Physician Hospital Organization Agreement, § 7.1.

10.     Plaintiffs' claims are barred, in whole or in part, under the doctrine of substantial compliance.

11.     Plaintiffs' claims are barred, in whole or in part, under the doctrine of unjust enrichment.

12.     Plaintiffs' claims are barred, in whole or in part, under the applicable statute of limitations and/or contractual limitations. *See, e.g.,* 2012 Hospital Service Agreement, § 4.1.1; 2021 Physician Hospital Organization Agreement, § 1.4.

13.     Plaintiffs' claims are barred, in whole or in part, because the relief sought would impose an undue hardship on Aetna, which simply adhered to a reimbursement rate set by an unaffiliated governmental body.

14

14.     To the extent Plaintiffs seek equitable relief, Plaintiffs are equitably estopped from asserting a claim for an *ex post facto* reimbursement rate adjustment for 340B-acquired drugs.

15.     Plaintiffs' claims against Aetna are barred, in whole or in part, for lack of justiciable injury.

16.     Plaintiffs' claims are barred, in whole or in part, for lack of material breach.

17.     In the event of an adjudged liability, Aetna is entitled to an offset of the amount Plaintiffs received by way of increased reimbursement payments for non-drug items and services during the relevant time period.

18.     Aetna met all applicable legal duties, to the extent it had any such duties.

19.     In the event that Aetna becomes aware that the Complaint is barred by any other matter constituting an avoidance or affirmative defense, Aetna reserves the right to assert the same.

WHEREFORE, Defendants Aetna Health Inc., Aetna Life Insurance Company, and Aetna Health Management LLC respectfully request entry of a judgment in Aetna's favor and finding that Plaintiffs take nothing, that Plaintiffs' claims be dismissed with prejudice, and that Aetna be awarded all such other and further relief to which it may be justly entitled

## COUNTERCLAIM

For its claims against UNC, Aetna incorporates the responses and allegations set forth above in its Answer and Defenses and further alleges and states as follows:

15

## PARTIES

1.      Aetna is an MAO that contracts with CMS to administer Medicare benefits through MA plans for eligible Medicare enrollees. Aetna Health Inc. is a Pennsylvania corporation, Aetna Life Insurance Co. is a Connecticut company, and Aetna Health Management, LLC is a Delaware company.

2.      Counter-defendant UNC Health owns, operates, and manages hospital systems, individual hospitals, and related services across North Carolina, including:

> a.  UNC Hospitals, which is a component unit of Plaintiff UNC Health. UNC Hospitals owns and operates a hospital system and related services in and around Orange County, North Carolina;

> b.  UNC Health Johnston, which UNC Health manages. UNC Health Johnston owns and operates a hospital system and related services in and around Johnston County, North Carolina; and

> c.  UNC Health Nash, which UNC Health manages. UNC Health Nash owns and operates a hospital system and related services in and around Nash County, North Carolina.

## JURISDICTION

3.      Aetna files this Counterclaim pursuant to Federal Rule of Civil Procedure 13.

4.      The Court has subject matter jurisdiction over these counterclaims because Aetna's claims against UNC arise pursuant to 28 U.S.C. § 1331 as claims arising under the

16

Constitution, laws, or treaties of the United States and pursuant to 28 U.S.C. § 1442. Additionally, the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

**FACTUAL BACKGROUND**

5.    UNC, as defined herein, is comprised of hospitals participating in the federal 340B program, which limits the amount that certain drug manufacturers may charge certain hospitals or qualified facilities that treat certain low-income and uninsured patients for outpatient drugs.[11] Hospitals participating in the 340B program such as UNC are commonly referred to as "**340B hospitals**" and provide, among other services, outpatient prescription drugs ("**340B-acquired drugs**" or "**340B drugs**"). Historically, HHS reimbursed 340B hospitals for 340B-acquired drugs at the drugs average sale price ("**ASP**") plus 6 percent (ASP +6%).[12]

6.    In July 2017, during its rulemaking process for CY 2018, the Departments proposed a reduction to 340B hospital reimbursement rates.[13] As a policy matter, the proposed rate reduction resulted from what the agency viewed as flagrant overpayments to 340B hospitals. That is, 340B hospitals would acquire drugs from the manufacturer at the statutorily imposed discount price and were then reimbursed for those same drugs at the standard Outpatient Prospective Payment System ("**OPPS**") rate of ASP +6%.

---

[11] *See* 42 U.S.C. § 256b(a).
[12] *See* 70 Fed. Reg. 68, 516, 68,639-68,641 (Nov. 10, 2005); *see also* Final Rule, 88 Fed. Reg. 77150, 77, 151 (Nov. 8, 2023) (emphasis added).
[13] *See* 82 Fed. Reg. 33558 (July 20, 2017).

17

7.     Effective January 1, 2018, the Departments reduced the OPPS reimbursement rate for hospitals that provide 340B-acquired drugs from ASP +6% to ASP -22.5%.[14] This adjustment was based on the statutory requirement that OPPS rates accurately reflect the acquisition costs.[15]

8.     To achieve budget neutrality, HHS increased CMS's reimbursement payments to all hospitals (both 340B and non-340B) for ***non-drug items and services*** under Medicare OPPS by 3.19%. Put differently, CMS effectively "funded" a 3.19% payment increase to all hospitals for non-drug items and services by reducing reimbursement payments to 340B hospitals for 340B-acquired drugs. Notably, due to the 3.19% increase in non-drug items and services, many 340B hospitals received more money than they would have had the 2018 rate reduction not taken place. Moreover, the 340B rate reduction resulted in Aetna receiving lower monthly payments from CMS than it would have otherwise.

9.     Aetna contracted with UNC, and, as it relates to this case, the parties' Agreements incorporate reimbursement rates set by CMS, which includes 340B-acquired drugs. The Agreements further provide that 340B-acquired drugs would be reimbursed at the CMS rates in effect when services were provided (e.g., "The rate applied will be the applicable Agreement rate in effect on the date of discharge") and includes multiple provisions that expressly prohibit the very retroactive rate adjustment/payments UNC

---

[14] *See* 82 Fed. Reg. 52,356-02, 52,490-52,509 (Nov. 13, 2017).
[15] *Id.* at 52,495, 52, 501.

Case 1:25-cv-00461-JPB-JLW     Document 18     Filed 09/22/25     Page 18 of 25

seeks to impose in its Complaint. *See, e.g.,* 2021 Physician Hospital Organization Agreement Rate Schedule at pp. 158, 176, 188 ("The Medicare Allowable Payment is…final and will not be impacted by cost settlements, reconciliations, or any other retroactive adjustments performed by a Medicare Administrative Contractor (MAC) for both overpayments and underpayments"); *id.* at pp. 162, 180, 192 ("Payment will be based on the version of the software and the applicable Medicare rate file in use by Company on the date of service"); 2012 Medicare Amendment to Hospital Services Agreement Rate Schedule at p. 8 ("The Medicare Allowable payment is…final and exclusive of cost settlements, reconciliations or any other retroactive adjustments as completed by a F1 for both overpayments and underpayments"); *id.* at p. 12 ("Payment will be based on the version of the software and the applicable Medicare rate file in use by Company on the date of service").

10.    As it relates to this case, Aetna has no hand in the Departments' decision to reduce the reimbursement rate for 340B-acquired drugs; it simply adhered to the parties' agreed-upon terms when applying CMS's reimbursement rate to pay the claims at issue.

11.    Pursuant to the parties' Agreements, UNC was only entitled to be reimbursed by Aetna for 340B drug claims at a negotiated percentage of the ASP-22.5% Medicare Allowable rate during the Disputed Period.

12.    On information and belief, Aetna inadvertently paid certain claims for 340B-acquired drugs at ASP +6% in error and UNC had knowledge of these payment errors.

19

## CAUSES OF ACTION

### COUNT #1
### BREACH OF CONTRACT

13.     Aetna realleges and incorporates by reference the allegations contained in Paragraphs 1-12 above.

14.     Aetna and UNC entered into a valid, binding contract.

15.     Aetna seeks, and is entitled to recover, overpayments for any claims for 340B drugs during the Disputed Period that were reimbursed at ASP+6%, as such services should have been paid at the ASP-22.5% rate pursuant to the parties' Agreements.

16.     In the alternative, if the Court finds that claims for 340B drugs during the Disputed Period should have been reimbursed at the ASP+6% rate pursuant to the parties' Agreements, Aetna seeks, and is entitled to recover, the amount that UNC received by way of increased reimbursement payments for non-drugs items and services during the Disputed Period.

17.     UNC is legally required to return these overpayments pursuant to the Agreements.

18.     UNC's failure to return the overpayments is a breach of the parties' Agreements.

19.     Aetna has been damaged as a result of UNC's breach of contract in an amount to be determined at trial.

20.     Aetna is also entitled to an offset, recoupment, and/or set-off as a result of the foregoing overpayments.

20

21.     Aetna seeks and is entitled to recover overpayments for any claims for 340B drugs during the Disputed Period that were reimbursed at ASP +6%, as such services should have been paid at the ASP -22.5% rate pursuant to the parties' Agreements.

22.     UNC is legally required to return such overpayments.

23.     UNC's failure to return the overpayments is a breach of the parties' Agreements.

24.     Aetna has been damaged as a result of UNC's breach of contract in an amount to be determined at trial.

25.     Aetna is also entitled to an offset, recoupment, and/or set-off as a result of the foregoing overpayments.

### COUNT #2
### MONEY HAD AND RECEIVED FOR OVERPAYMENTS

26.     Aetna realleges and incorporates by reference the allegations contained in Paragraphs 1-12 above.

27.     Aetna conferred a benefit on UNC by way of the payments for any claims for 340B drugs during the Disputed Period that were reimbursed at ASP +6%, as such payments were overpayments, and UNC was aware that they should have been paid at the ASP -22.5% rate pursuant to the parties' Agreements.

28.     UNC received and voluntarily accepted/retained the amounts paid by way of the overpayment for claims for 340B drugs.

29.     UNC received these overpayments for 340B drugs with dates of service during the Disputed Period at an elevated reimbursement rate of ASP+6% as a result of reasonable mistake.

30.     The overpayments that Aetna paid to UNC should be returned to Aetna in all fairness, equity, and good conscience. It would be inequitable for UNC to retain the overpayments. Accordingly, Aetna seeks return of money had and received.

31.     Aetna pleads this claim in the alternative to Count 1 of its Counterclaims.

<u>COUNT #3</u>
<u>MONEY HAD AND RECEIVED FOR NON-DRUG ITEMS AND SERVICES</u>

32.     Aetna realleges and incorporates by reference the allegations contained in Paragraphs 1-12 above.

33.     If the Court finds that claims for 340B drugs during the Disputed Period should have been reimbursed at the ASP+6% rate pursuant to the parties' Agreements, Aetna conferred a benefit on UNC by way of the increased reimbursement payments for non-drug items and services during the Disputed Period as such payments were overpayments.

34.     UNC received and voluntarily accepted/retained the amounts received by way of increased reimbursement payments for non-drug items and services during the Disputed Period.

35.     UNC received these overpayments for non-drug items and services as a result of reasonable mistake.

22

36. The overpayments that Aetna paid to UNC should be returned to Aetna in all fairness, equity, and good conscience. It would be inequitable for UNC to retain the overpayments. Accordingly, Aetna seeks return of money had and received.

37. Aetna pleads the claim in the alternative to Counts 1-2 of its Counterclaims.

## JURY DEMAND

Aetna demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Defendants and Counterclaimants Aetna Health Inc., Aetna Life Insurance Company, and Aetna Health Management LLC respectfully request entry of final judgment in Aetna's favor, awarding Aetna its damages as set forth above, and all such other and further relief to which it may be justly entitled.

Dated: September 22, 2025

Respectfully submitted,

By: */s/ Kelsey L. Kingsbery*
Kelsey L. Kingsbery
N.C. Bar No. 51736
ALSTON & BIRD
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
(919) 862-2200
(919) 862-2260 (Fax)
Email: kelsey.kingsbery@alston.com

John B. Shely (Notice of Special Appearance forthcoming)
State Bar No. 18215300
*jshely@hicks-thomas.com*
M. Katherine Strahan (Notice of Special Appearance forthcoming)
State Bar No. 24013584
*kstrahan@hicks-thomas.com*

23

Jeff Migit (Notice of Special Appearance
forthcoming)
*jmigit@hicks-thomas.com*
Allison Fisher (Notice of Special Appearance
forthcoming)
*afisher@hicks-thomas.com*
Hicks THOMAS LLP
700 Louisiana Street, Suite 2300
Houston, Texas 77002
Tel: (713) 547-9100
Fax: (713) 547-9126

**ATTORNEYS FOR DEFENDANTS
AETNA HEALTH INC., AETNA LIFE
INSURANCE CO., AND AETNA
HEALTH MANAGEMENT LLC**

24

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2025, a true and correct copy of the foregoing was served filed via the Court's CM/ECF system, which will serve electronic notice of the filing to all Counsel of Record.

Gary S. Qualls,
gary.qualls@klgates.com
Nate A. Huff
nate.huff@klgates.com
Anderson M. Shackelford
anderson.shackelford@klgates.com
K&L GATES LLP
430 Davis Drive
Morrisville, NC 27560
Tel: (919) 466-1195
Fax: (919) 516-2072

*Attorneys for Plaintiffs University of North Carolina Health Care System; Johnston Health Services Corporation, a/k/a Johnston Memorial Hospital Authority, and Nash Hospitals, Inc.*

/s/ Kelsey L. Kingsbery
Kelsey L. Kingsbery
N.C. Bar No. 51736
ALSTON & BIRD
555 Fayetteville Street, Suite 600
Raleigh, NC 27601
(919) 862-2200
(919) 862-2260 (Fax)
Email: kelsey.kingsbery@alston.com

**ATTORNEY FOR DEFENDANTS AETNA HEALTH INC., AETNA LIFE INSURANCE CO., AND AETNA HEALTH MANAGEMENT LLC**